**In re The COLUMBIA GAS SYSTEM, INC. and Columbia Gas Transmission Corporation.**

**Bankruptcy Nos. 91–803, 91–804.**

United States Bankruptcy Court, D. Delaware.

Oct. 20, 1992.

James L. Patton, Jr., Laura Davis Jones, Robert S. Brady, Wilmington, DE, Lewis Kruger, Robin E. Keller, Stroock & Stroock & Lavan, New York City, for Columbia Gas System, Inc.

John F. Hunt, Cravath, Swaine & Moore, New York City.

Sharon W. Lindsay, Morgan Guar. Trust Co. of New York, New York City.

HELEN S. BALICK, Bankruptcy Judge.

This is the court's decision on the joint application of Columbia Gas System, Inc. and Morgan Guaranty Trust Company of New York for payment of compensation to Morgan (Docket No. 1572).

---

## I. *History*

On October 10, 1991, this court considered the motion of The Columbia Gas System, Inc. (CG) for an Order authorizing CG to assume certain contracts in connection with the sale of the Columbia Gas Development of Canada Ltd, a wholly-owned Canadian subsidiary. The only contract referenced in that motion of relevance here was a pre-petition letter agreement with Morgan Guaranty Trust Company of New York. In that agreement, dated May 13, 1991, Morgan agreed to perform financial advisory services in connection with an anticipated sale of Columbia Gas Development of Canada Ltd., a subsidiary of CG. CG agreed to pay Morgan an engagement fee, a transaction fee, and "reasonable out-of-pocket expenses." These expenses included Morgan's legal fees incurred in connection with Morgan's services. The motion reiterated that Morgan was a "financial advisor" that CG wished to continue to retain "to assist the Debtor in the sale of substantially all of the assets or stock of Columbia Canada." The court approved this motion on October 10, with the proviso that Morgan would file an application for compensation, which would be subject to final court review.

Eventually, the sale of the Canadian subsidiary was approved, and thereafter, CG and Morgan jointly filed the above application to approve a transaction fee of $1,521,-827, $214,976 of which remained unpaid to Morgan. The application also sought approval of $58,134 in expenses incurred by Morgan. CG has already reimbursed Morgan for these expenses.

A hearing on this application was held on August 26, 1992. At that time, this court declined to approve the expense request, as the required expense itemization (Exhibit E to docket no. 1572) had been omitted from the joint application. The transaction fee, however, was approved. Thereafter, CG submitted an affidavit of Robert Sroka, Vice President of Morgan, that purported to provide the information required for this court to determine whether the expenses requested were reasonable.

## II. *The Legal Fees*

According to the Sroka affidavit, Morgan seeks reimbursement for $10,-197.00 in legal fees. For a multitude of reasons, none of this amount can be approved.

Attached to the affidavit is an invoice statement from Davis Polk & Wardell, counsel for Morgan, describing the legal services it rendered:

1. Advice with respect to the law applicable to approval of Morgan's retention.
2. Preparation of an affidavit for Morgan to submit in support of the retention.
3. Review of "other papers relating to the retention prepared by counsel to Columbia."
4. Communication with bank lender in connection with Morgan's retention.
5. Advice generally with respect to the foregoing.

Only items 4 and 5 conceivably fall within the scope of the May 13 letter retention agreement and the October 10 order. As indicated by the history of Section I, this court never authorized the payment of Morgan's legal fees with respect to its own retention.

Presumably to provide the court with an overview of the work Davis Polk performed, Morgan has attached to the affidavit five invoices from Davis Polk, each for services rendered "in connection with various merger and acquisition matters." The first and fourth invoices include legal work performed prior to May 13, 1991. The fifth invoice is for work performed entirely before May 13, 1991. The five invoices are for amounts of $7,845.63, $37,525.25, $19,-762.37, $12,622.21, and $20,154.03, respectively—a sum of $97,909.49. The court infers that these invoices reflect services Davis Polk performed on behalf of multiple clients, including Morgan. These invoices are of no help to Morgan in its obligation to provide the court with a substantiation of the expenses requested.

Morgan has also attached several timesheets to justify the legal fees sought.

They are inadequate. The timesheets, which reflect approximately 27 hours of legal work, contain many entries that contain lumping or incomplete references, and do not satisfy the specificity requirements applicable in this Circuit. *E.g., In re Horn & Hardart Baking Co.*, 30 B.R. 938 (Bankr.E.D.Pa.1983). For example, on August 28, 1991, P. Model spent 3.5 hours for "Calls conflicts, and other matters w/Jenks, Tomatsu, Levine, ____, Pillsbury and Case, letter ____ to banks, research on engagements." Several entries for "Caplan" totaling at least 3.4 hours are somewhat illegible; however, the dates are clear—April 29, 1991 and May 9, 1991.

Moreover, to the extent the timesheets satisfactorily specify activities on or after May 13, 1991, practically all the time appears to have been spent on retention matters. Finally, even if this court *had* authorized the payment of Morgan's legal fees with respect to its own retention, the amount of time Davis Polk expended in preparing Morgan's retention application is quite excessive.

In summary, the mass of documents Morgan has submitted do not satisfy its burden to show that the requested legal fees are both authorized and reasonable.

### III. *Other Expenses*

■ According to the Sroka affidavit, Morgan also seeks reimbursement for $28,723.00 for "travel/meals," $9,840.00 for "communication/messenger/carfare," and $9,374.00 for "production/information technology." For reasons similar to those discussed in connection with the legal fees, the amount of approved expenses must be reduced from the amount requested.

Attached to the affidavit is a summary of expenses. Expenses pre-dating the agreement are included in this summary. In addition, the sole specific reimbursement voucher attached to the affidavit is from James C. Li for travel on March 13, 1991. Another listed expense for $750.00 is for "Unbilled Miscellaneous." Several charges in excess of $1,000.00 are for "travel & entertainment" without further explanation. Indeed, nowhere in the affidavit or attachments is there a statement explaining the need or reasonableness for any of the several categories of expenses listed above for which Morgan now seeks approval. It is impossible to determine the reasonableness of the expenses based upon the documentation provided. *See In re Horn & Hardart Baking Co.*, 30 B.R. 938, 944 (Bankr.E.D.Pa.1983) (burden on applicant, not court, to justify reasonableness of amount requested); *In re Gillett Holdings, Inc.*, 137 B.R. 475, 491 (Bankr.D.Colo.1992).

As indicated by the history of Section I, Morgan has already had two opportunities to justify its expense application. It will not receive a third. *In re Bank of New England*, 142 B.R. 584, 587–88 (D.Mass. 1992).

The court recognizes that there must be some non-zero amount of expenses Morgan incurred that are reasonable. In particular, while Morgan representatives may have engaged in excessive travel to Canada, it is safe to assume that there was more than one meeting in Canada that Morgan needed to attend. While the court finds that the affidavit does not satisfy Morgan's burden as to any amount, the court will allow expenses in the amount of $10,000.00. *See In re Villa Capri of Georgia Associates Ltd.*, 141 B.R. 257, 264 (Bankr.N.D.Ga.1992).

### IV. *Conclusion*

A transaction fee of $1,521,827.00 is approved, and Columbia Gas Systems, Inc. is authorized to pay to Morgan the balance of $214,976. Morgan Guaranty Trust Co. of New York is granted a final allowance of reasonable expenses of $10,000.00. Morgan will repay to Columbia Gas Systems the unapproved expenses, an amount of $48,134.00.

IT IS SO ORDERED.