**In the Matter of PETER J. SCHMITT CO., INC., et al., Debtors.**

**BEATRICE CHEESE, INC., et al., Plaintiffs,**

v.

**PETER J. SCHMITT, CO., INC., et al., Defendants.**

**Bankruptcy Nos. 92–694 to 92–699. Adv. No. 93–8.**

United States Bankruptcy Court, D. Delaware.

June 10, 1993.

Laurie Selber Silverstein, Joanne Ceballos, Potter Anderson & Corroon, Wilmington, DE, Robert J. Bothe, McGrath, North, Mullin & Kratz, Omaha, NE, for plaintiffs.

John Wm. Butler, Jr., Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for debtors.

## *MEMORANDUM OPINION AND ORDER*

HELEN S. BALICK, Bankruptcy Judge.

Beatrice Cheese, Inc., ConAgra, Inc., and Swift–Eckrich, Inc. have moved to strike a brief filed by Peter J. Schmitt, Inc. and for sanctions. This is the court's Opinion on the motion, which is a core matter. 28 U.S.C. § 157(b)(2)(A) & (B).

### I. *Facts*

The procedural history of certain adversary proceedings and a related motion in Peter J. Schmitt's Chapter 11 proceedings, and other matters of record provide the facts underlying the motion to strike and for sanctions. Schmitt and five related corporations filed Chapter 11 petitions in this court on May 29, 1992. A consolidated plan was confirmed on April 23, 1993. The order confirming the plan authorizes the Debtors to escrow in a segregated account monies to pay unpaid professional fees and expenses incurred before the plan's effective date. On January 4, 1993, Beatrice commenced an adversary proceeding against Schmitt, seeking relief relating to Beatrice's alleged status as an Ohio agricultural lien creditor. Within two weeks, nine other Ohio creditors alleging a similar status also commenced adversary proceedings against Schmitt and Marine Midland, N.A.[1] On March 4, Beatrice Cheese, ConAgra and Swift–Eckrich each moved for summary judgment on its complaint. One week later, Schmitt cross-moved for summary judgment.

On March 15, Schmitt filed a motion and supporting memorandum in its Chapter 11 proceedings to estimate and value statutory lien claims of all alleged Ohio lien creditors pursuant to 11 U.S.C. § 502(c) and (d). Case No. 92–695, docket nos. 1328, 1329. The motion raised, for the most part, the *identical* legal issues that were being extensively briefed in connection with the cross-motions, and Schmitt requested this estimation motion be heard on March 24. The Ohio lien creditors vehemently objected to both the procedure Schmitt was attempting to employ, as well as the substance of the motion.

At the March 24 hearing, counsel for Schmitt requested a continuance of the motion. He and the court recognized that a ruling on the cross-motions would resolve the estimation motion. The court continued the estimation motion to April 22. Docket no. 1535, at 164–69.

Also on March 24, the court held a pre-trial conference on the above Ohio lien adversaries. Schmitt requested an expedited briefing schedule, as well as expedited consideration from this court of the cross-motions, because the legal issue of whether the Plaintiffs possessed Ohio lien creditor status affected Schmitt's confirmation hearing, which was scheduled for April 22. Counsel for certain of the Plaintiffs apprised the court that additional Ohio creditors wished to participate in the briefing on this issue. The parties also wished to consolidate the adversary proceedings.

At the time of this conference, only the reply briefs were due in the three adversaries where cross-motions for summary judgment had been filed. This court allowed the filing of additional adversary proceedings and summary judgment motions raising the same legal issues, agreed the adversaries should be consolidated, and ordered that any additional briefing by any of the Ohio Plaintiffs was due April 2. Schmitt's reply to these briefs was due April 5. Finally, the court ordered that all additional briefs should be substantively coordinated, and specifically admonished counsel that briefs to be filed by parties with similar interests should not be duplicative of each other or of previously filed briefs. The court stated it would consider imposing appropriate sanctions if these admonitions were not heeded.

1. Marine Midland, N.A. intervened as a defendant in those adversaries where it was not named as a defendant. A93–8, docket no. 35.

During the ensuing weeks, the briefs of the parties were timely filed, and this court shortly thereafter issued a Memorandum Opinion and Order resolving the cross-motions. That Opinion ruled that Schmitt could avoid an unperfected lien pursuant to 11 U.S.C. § 545, and that as of the date of Schmitt's Chapter 11 petition, the Ohio creditors' liens were unperfected under Ohio law. *Beatrice Cheese, Inc. v. Peter J. Schmitt (In re Peter J. Schmitt)*, 154 B.R. 47 (Bankr.D.Del.1993).

## II. *Discussion*

The day after Schmitt filed its "Closing Omnibus Answering and Reply Brief," A–93–8, docket no. 30 (hereinafter reply brief), three of the Ohio creditors, Beatrice Cheese, ConAgra and Swift–Eckrich, filed their motion to strike the reply brief and for sanctions. The motion to strike the reply brief can be disposed of summarily. As the April 16 Opinion indicated, all briefing was fully considered.

### A. *Standard and Scope of Review on the motion for sanctions*

The Ohio creditors' alternative motion, the motion for sanctions, alleges Schmitt violated the court's March 24, 1993 order prohibiting duplication of written argument and requests the court bar the payment by the consolidated estates of any counsel fees and costs incurred by Schmitt's counsel in the preparation of the reply brief. *See, e.g., In re Heck's Properties, Inc.*, 151 B.R. 739 (S.D.W.Va.1992) (discussing inherent power of court to impose sanctions). In ruling upon this request, it is appropriate to describe the twofold purpose of the order prohibiting duplication. First, the court was concerned about ruling upon the cross-motions within an expedited time frame. A significant volume of briefing was already before the court in connection with the issues raised by the cross-motions, and therefore it was appropriate to minimize additional briefing.

Second, the court sought to deter wasteful lawyering, which benefits no one, and in the case of court-approved professionals, unjustifiably depletes the debtors' estates.

Since Schmitt's counsel (Skadden, Arps, Slate, Meagher & Flom) were retained pursuant to 11 U.S.C. § 327(a), this latter concern specifically applies to them.

█ In connection with that retention, there exists a well-developed standard that applies regardless of whether Schmitt's counsel violated the non-duplication order. The court may award to professionals *"reasonable* compensation for actual, *necessary* services rendered by such ... attorney, ... and by any paraprofessional persons employed by such ... attorney...." 11 U.S.C. § 330(a)(1) (emphasis added). The bankruptcy court has an independent obligation to ensure that the requirements of section 330(a) have been satisfied before awarding compensation thereunder. *In re Continental Airlines*, 150 B.R. 334, 340 (D.Del.1993); *In re Columbia Gas System*, 150 B.R. 553 (Bankr.D.Del.1992) (*sua sponte* reducing approved expenses from $58,134 to $10,000).

Exhibit A of the sanctions motion alleges not only that the reply brief is duplicative of the earlier briefs, but that the earlier briefs are duplicative of each other. Thus, while that motion seeks only to bar payment of fees and costs incurred in connection with the reply brief, at this time the court shall consider the section 330(a) standards in connection with the earlier briefs as well. Schmitt's counsel is not prejudiced by this scope of review, since at a subsequent fee hearing, they would have to satisfy the same standards before this court would approve an award of fees and expenses in connection with that earlier work product. Moreover, in considering the alleged duplicative and excessive nature of related briefing, it is much more judicially efficient to consider all the briefing at one time.

As previously stated, the court carefully read and considered every document filed in connection with the Ohio lien litigation. After the completion of this review, it was apparent that significant portions of Schmitt's briefing were *not* necessary, did *not* benefit the estate, and *were* duplicative.

In summary, the court will apply the section 330(a) standards to all the briefing Schmitt's counsel submitted in connection with the cross-motions and the related estimation motion in the Chapter 11 case. Subsections B and C below discuss the duplicative and excessive nature of the briefs filed before Schmitt's reply brief. Subsection D below discusses the duplicative and excessive nature of the reply brief. The examples contained in these subsections are not exhaustive, but merely the instances more easily referable without extended analysis of the actual legal issues addressed in Schmitt's briefing.

After discussing the excessive nature of the briefing, the section 330(a) standards will be employed first in considering an appropriate reduction in allowed fees and costs. *See infra* Section III. Thereafter, the court will determine what sanction, if any, is appropriate for the violation of the court order. *See infra* Section IV.

B. *Schmitt's briefs were duplicative of each other.*

Schmitt filed four briefs relating to the issues ruled upon by the court to resolve the cross-motions for summary judgment. They will be discussed in the order they were filed. First there was Schmitt's opening brief in support of its summary judgment motion *Beatrice Cheese, Inc. v. Schmitt*, A–93–8, docket no. 18 (filed on March 12). Twenty-five pages of that brief discussed the following issues: avoidability under section 545, and perfection of an agricultural lien under Ohio law.

The first duplication occurred three days later when Schmitt filed its estimation motion and supporting memorandum. Pages two through nine of the estimation motion restate some of the facts and legal argument Schmitt had already provided in extensive detail in the afore-mentioned opening brief. The facts and legal argument contained in the estimation motion were then repeated again, and in greater detail, in the 35 page supporting memorandum. Needless to say, the arguments of this supporting memorandum were also duplica-

tive, or perhaps more appropriately, triplicative of the opening brief.

On March 18, Schmitt filed its "corrected answering brief" to Beatrice Cheese's summary judgment motion. A–93–8, docket no. 22, (hereinafter "answering brief"). This brief spent 16 pages repeating the same arguments as before concerning the section 545 and Ohio law issues. Indeed, footnote 15 *duplicates* footnote 14 of the opening brief.

Schmitt's asserted intention in this repetition was to convenience the court. Answering Brief, at 3 n. 2. First, whether this duplication was convenient does not address the issue of independent benefit to the estate. Second, the duplication was not convenient. The court was obligated to carefully read the text of each of the briefs to ensure that no different arguments were raised.

Briefing methods that convenience the court and eliminate unnecessary repetition of argument that arises in multiple procedural contexts do exist and have been previously employed in this court. Briefs dealing with related motions can be combined. Briefs can also cross-reference the reader to an already docketed pleading.

C. *Schmitt's briefs were internally duplicative and excessive.*

In addition to the duplicative nature of some of the briefing contained in these three briefs, each brief viewed by itself was also duplicative and excessive. First, the briefs contained many "string cites"— multiple citations to cases from various jurisdictions all standing for the same proposition.

String cites are not helpful to the court. If the legal proposition is not controversial, there is no need to cite more than one case, preferably from the Third Circuit. If the proposition is controversial, or there is a "split" in the decisional caselaw, mere citation to a number of cases supporting the advocate's view by itself is not beneficial. The court does not analyze legal issues by counting the number of decisions in favor or opposed to a result. What is beneficial is for the advocate to choose the most well-

reasoned case or cases supporting its position, and to carefully review that reasoning. In those rare circumstances where it is also appropriate to indicate the overall "headcount" on a issue of law, the preferable method is to cite a secondary source that has already collected the cases on both sides. None of the string cites contained in the briefs here were or could have been helpful to the court.

In the answering brief, string cites appear at page 19 (four cases), page 20 (four cases in addition to a citation to *Collier on Bankruptcy*), page 25 (same), pages 23–24 (four cases), and page 29–30 (same). The string cite at pages 23–24 was particularly wasteful, as it supported a legal proposition that had already been discussed and excessively supported on page 19.

Equally unhelpful were the string of footnotes strewn throughout the opening brief (15 footnotes), the answering brief (17), and the memorandum in support of the estimation motion (19). While sparing use of terse footnotes can be useful, the numerous footnotes in the briefs, some of which were quite extensive, served only to disrupt the flow of the text, repeat matters discussed in the text, or discuss matters that should have been included in the text or not at all. Footnotes were also used to introduce legal or factual assertions without support.

For example, in connection with this last comment, footnote four of the answering brief stated the Ohio statute had been recently amended. No authority was provided. The footnote proceeded to speculate that the amendment was "no doubt required by the realization" that the priority system under the previous version made financing of agricultural product handlers virtually impossible. Again, no citation to any authority was provided. This type of creative lawyering, in addition to being of no benefit to the estate, is inappropriate.

One particularly egregious example of repetition of matters in the text of the answering brief is footnote eight on page 24. That footnote stated the unremarkable proposition that a trustee may avoid even a properly-perfected statutory lien if the lien is not enforceable against a bona fide purchaser for value. The footnote then cited three cases as well as Collier on Bankruptcy. The substance of this footnote reappeared in the text at page 25, where the same proposition was discussed, and the same three authorities were cited. Similar repetition exists in footnote seven (repeating argument contained on pages 20–21) and footnote 10 (requoting portion of the Ohio statute).

A variation on this repetition theme in the answering brief is footnote 11, which is *a perfect replica* of footnote 6.

### D. Schmitt's Reply Brief Is Partially Duplicative of its Earlier Briefs.

As the Ohio creditors assert, Schmitt's reply brief does partially duplicate its earlier briefing. In addition, considered without reference to the earlier briefs, this 32 page brief with its 28 footnotes is excessive.

Schmitt's argument on page six and seven repeats the same argument discussed in its answering brief at pages 23–24. An argument concerning an absence of statutory language giving the agricultural lien priority over a bona fide purchaser on pages seven to eight also appears in the answering brief at pages 25–26. One-half of page 10 contains a legal proposition and string cite remarkably similar to a proposition and string cite discussed on page 25 of the answering brief. Pages 16–17 raise the same argument the answering brief raises at pages 21–22 concerning the absence of express language relating the date of perfection back to the date of delivery. In connection with the issue of the retroactivity of the Ohio statute, page 20 discusses a Ohio appellate court case that was previously discussed in footnote 15 of the answering brief.

On page 21, the reply brief discusses constitutional aspects of the same retroactivity issue, and repeats argument contained in the answering brief at pages 34–37, and the opening brief at page 27–29.

In its response to the sanction motion, Schmitt's counsel points out that as a mat-

ter of procedural posture, the reply brief was the first opportunity Schmitt had to formally respond to some of the briefing of the Ohio lien Plaintiffs. While this is true, the timing of the reply brief does not give Schmitt authority to repeat arguments it has already made.

Schmitt also disputes that it did repeat argument, except where absolutely necessary. As the lengthy recitation of duplicative briefing above illustrates, Schmitt's factual assertion here is wrong. The remainder of Schmitt's arguments need not be discussed, as they address positions of Beatrice that are not adopted in this opinion.

### III. *The Requested Fees and Expenses of Schmitt's Counsel Shall be Reduced.*

█ The court shall not approve professional compensation or related expenses for work on matters that were duplicative, or excessive, and of no benefit to the estates such as those discussed in Section II.B–D. 11 U.S.C. § 330(a). In determining the amount of the disallowed compensation and expenses, several different factors relating to the quantity and quality of work will be considered. *See, e.g., In re Thomas,* 43 B.R. 510, 511 (Bankr.D.Mass.1984).

█ One measure is the total amount of pages Schmitt expended in addressing a legal issue as compared to its adversaries. The portion of Schmitt's memorandum of law in support of its estimation motion dealing with the avoidance, perfection, and retroactivity issues was 30 pages; in contrast, the longest substantive response in opposition to that motion was 11 pages. The portions of Schmitt's corrected answer and reply brief that related to these legal issues were 29 and 17 pages, respectively. By contrast, Beatrice Cheese's opening and reply brief totaled 12 and 9 pages, respectively.

Another measure is the actual benefit of those many pages Schmitt's counsel submitted. The court considers the estimation motion, the supporting memorandum, and the answering brief to have minimal benefit to the estate independent of the first-filed opening brief in advocating Schmitt's position on the issues raised by the cross-motions. The same is true of the reply brief to the extent it discussed the legal issues addressed in the April 16 Opinion.

It is also relevant that the issues Schmitt required 108 pages to discuss required the court only 11 pages to discuss. *Beatrice Cheese v. Peter J. Schmitt,* 154 B.R. 47.

In addition to these factors, the court will consider what Skadden, Arps has requested in compensation and expenses for its work performed on this litigation, as compared to what the court deems a reasonable amount would be in light of the benefit of the briefing. 11 U.S.C. § 330(a).

█ Skadden, Arps has filed its final fee application and all monthly timesheets. Each month's timesheets are divided into 37 substantive categories. The time Skadden, Arps spent on the Ohio lien adversary and estimation matters is contained in category 7 (claims analysis/administration) in its March 1993 timesheets and category 27 (reclamation/trust fund claims) in its January, February and March timesheets. A review of these timesheets indicates that the law firm expended over 267 hours resulting in fees of more than $55,000 in preparing the legal memoranda relating to the estimation motion and the summary judgment motions.[2] Related expenses approximate $15,499.[3] The court is also aware that, in the exercise of its billing discretion, Skadden, Arps has already voluntarily reduced its billed fees of $146,519 by $9,067 and its expenses by $293 in connection with these categories as a whole for the three months.

Taking all these factors into consideration, the court finds that the benefit to the Debtors' estates should be valued at $30,-

---

2. For several reasons, this number is necessarily an approximation only, including that a significant number of relevant time entries of the law firm professionals suffer from insufficient detail and lumping defects.

3. This figure was calculated by multiplying the total expense for each category in each month by the proportion of the relevant Ohio lien fees to the total fees for that month.

000 in fees, and that only $8,500 of the related expenses of Schmitt's counsel should be reimbursed by the estates. These reductions approximate 45% of the billed amounts. These reductions relate to only a portion of the fees and expenses Skadden, Arps has requested for January, February, and March, 1993 in categories 7 and 27. The reduction does not limit the responsibilities of Professional Fee Examiners, Inc. in reviewing any of the fee applications of that law firm.

IV. *Sanctions For Violation of The Court's Non–Duplication Order Shall be Imposed.*

■■■■■ For the reasons discussed in section II.D., the court concludes that the reply brief violated the non-duplication order. In considering the appropriate sanction, the court will consider two purposes of a sanction—compensatory and deterrence. *In re Kennedy,* 80 B.R. 674 (Bankr.D.Del.1987); *see generally Doering v. Union County Bd.,* 857 F.2d 191, 194 (3d Cir.1988) (discussing factors to consider in imposing a Rule 11 sanction).

First, while the court cannot be compensated for its loss of time, the Movants here, Beatrice Cheese, Inc., ConAgra, Inc., and Swift–Eckrich, Inc. can be compensated. Schmitt's counsel shall pay these entities the legal fees and expenses expended in preparing the motion to strike and the April 8 reply letter. This amount shall not exceed $600.00. The respective professionals are strongly encouraged to arrive at an consensual amount without requiring Beatrice Cheese's counsel to file an affidavit with this court.

This Opinion shall be published. That, in combination with the monetary sanction discussed below, will serve the deterrence purpose of the sanction.

In considering the monetary amount, the court should consider the minimum amount that will adequately deter future similar conduct by Skadden, Arps, and mitigating or aggravating factors. *See generally Doering,* 857 F.2d at 194–197. Here, the publication of this Opinion militates against a large amount, while the law firm's ability

to pay does not. Finally, the amount of duplication in violation of the court order was substantial. The court concludes that $10,000 is an appropriate monetary sanction. This sanction shall be concurrent with the fee and expense reduction of $38,500. Since the former number is smaller, the fee and expense reduction subsumes the $10,000 sanction.

An Order in accordance with this Opinion is attached.

## ORDER

AND NOW, June 10, 1993, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1. Skadden, Arps, Slate, Meagher & Flom may seek compensation up to $30,000 and expenses of $8,500 in connection with its work on the cross-motions for summary judgment in A–93–8 and the consolidated adversary proceedings, and on the motion to estimate and value statutory lien claims of alleged Ohio lien creditors.

2. Skadden, Arps, Slate, Meagher & Flom is sanctioned in the amount of $10,000 for its violation of the court's March 24 order; however, no payment to the estate is necessary because of the independent rulings of paragraph one of this Order.

3. No ruling is otherwise made with respect to the compensability of other time and expenses in categories 7 and 27 of the timesheets of Skadden, Arps, Slate, Meagher & Flom for the months of January, February and March 1993.

4. Skadden, Arps, Slate, Meagher & Flom shall pay the legal fees and expenses Beatrice Cheese, Inc., ConAgra, Inc., and Swift–Eckrich, Inc. expended in preparing the motion to strike and the April 8 reply letter. This amount shall not exceed $600.00. Skadden, Arps and opposing counsel are strongly encouraged to arrive at an consensual amount

without requiring opposing counsel to file an affidavit with this court.