## In the Matter of EDISTO RESOURCES CORPORATION, et al., Debtors.

### Bankruptcy Nos. 92–1345 through 92–1350.

United States Bankruptcy Court, D. Delaware.

Nov. 2, 1993.

---

Laura Davis Jones, Young, Conaway Stargatt & Taylor, Wilmington, DE, Van Oliver, Andrews & Kurth, L.L.P., Dallas, TX, for debtors.

John McLaughlin, Jr., United States Trustee's Office, Philadelphia, PA.

Neil B. Glassman, Bayard, Handleman & Murdoch, P.A., Wilmington, DE, David M. Bennett, Thompson & Knight, Dallas, TX, for Merrill Lynch, Pierce, Fenner & Smith, Inc.

Laurie S. Silverstein, Potter Anderson & Corroon, Wilmington, DE, for Official Committee of Unsecured Creditors.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

On August 13, 1993, Merrill Lynch Pierce Fenner & Smith filed an amended application requesting $525,000 in compensation and $108,736.99 for reimbursement of expenses for the period October 26, 1992 through May 27, 1993. For the reasons stated below, the amended application is allowed in the amount of $350,000 in compensation and $41,576.49 in expenses. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) & (B).

### I. *Facts*

Edisto Resources Corporation and related business entities retained Merrill Lynch in June, 1991 pursuant to a letter agreement as a financial advisor to assist the Edisto entities in a financial restructuring. That letter agreement also provided that Edisto would reimburse Merrill Lynch for "its reasonable out-of-pocket expenses, including the fees and disbursements of its legal counsel, incurred in connection with its activities hereunder." April 29, 1992 letter, at 6, ¶ 2b.

Edisto and certain of the related entities filed Chapter 11 petitions on October 26, 1992. Because of the "pre-planned" nature of the cases, a plan of reorganization and disclosure statement were also filed on this date.

On December 29, 1992, this court heard and approved Edisto's modified application to retain Merrill Lynch *nunc pro tunc* to October 26, 1992. The modified application requested compensation for Merrill Lynch at a

rate of $75,000 per month, "plus all out of pocket expenses of the type described [in the April 1992 letter agreement]." Docket No. 131, at 2, ¶ 4. At the hearing, the court emphasized to counsel for Merrill Lynch that each Merrill Lynch professional would be required to account for her time through the use of timesheets in accordance with the requirements of this District, and that subsequent fee applications would be carefully reviewed and the amounts requested therein reduced if necessary. *See generally* Docket No. 139, at 19–22. The retention order reiterated these points and allowed Merrill Lynch to provide services only as "set forth in the [modified] engagement agreement." Docket No. 131, at 2, ¶ 2.

A plan of reorganization was ultimately confirmed in the Edisto cases, and thereafter, Merrill Lynch filed its original application for compensation and reimbursement of fees. Both the Office of the United States Trustee and the Unsecured Creditor's Committee filed objections. In addition, at the hearing on the application, the court pointed out the insufficient nature of the description of services contained in the application. Specifically, the court pointed out the unified description of both pre-petition and post-petition services, a complete absence of Merrill Lynch time sheets (despite the court's prior instructions), and legal fees and expenses buried in the expense request without corresponding timesheets and expense itemizations. The court also had other questions concerning the request for expense reimbursement. The hearing on Merrill Lynch's application was continued, and thereafter, Merrill Lynch filed its amended application. A hearing on this amended application was held on September 15, 1993, at which time Merrill Lynch further supplemented the record.

II. *Discussion*

A. *The Request For Compensation Will Be Reduced.*

■ The record in support of the $525,000 request for compensation is still deficient.

The amended application's first description of services still blends together a 17 month pre-petition period with a 7 month post-petition period. While the amended application contains a new "Summary of Activities" section which, on a weekly basis, indicates work performed pre-petition and post-petition, the descriptions indicate that the bulk of Merrill Lynch's work was performed pre-petition. In particular, during the pre-petition period, Merrill Lynch undertook comprehensive studies of Edisto's complex liability structure and debt service obligations, the projected cash flow, and alternatives for dealing with Edisto's long term liquidity problems. Also pre-petition, Merrill Lynch undertook an extensive valuation analysis. Docket No. 654, Exhibit E, at 2. All this work preceded the filing of the initial Chapter 11 plan and disclosure statement on the first day of Edisto's Chapter 11 case. According to the objection of the Unsecured Creditors Committee, Merrill Lynch was paid $802,731.86 for its pre-petition work.

Post-petition, the majority of Merrill Lynch's time was spent on considering certain claw-back warrants, revising the plan and disclosure statement, preparing and providing expert testimony, and on matters relating to its own retention and proof of claim. Merrill Lynch has not indicated the number of hours it spent on these post-petition matters, or submitted any other information that would satisfy its burden of proof and allow the court to conclude that $75,000 per month for a total of $525,000 represents reasonable compensation for these post-petition activities. Indeed, Merrill Lynch's own application implicitly concedes this, as it asks this court to consider the nature and degree of its pre-petition services as a basis for justifying its post-petition fees. *E.g.,* Docket No. 654, at 13, ¶ 23(a), (f) & (g). Thus, the amount of requested compensation must be reduced.

On September 14, 1993 Merrill Lynch and the Unsecured Creditors Committee jointly filed a stipulation resolving the latter's objection.[1] This stipulation provides that: "a total fee of $350,000, rather than the $525,000

1. Nothing in the record indicates that the Office of the United States Trustee consents to the

terms of this stipulation.

requested in Merrill Lynch's application, constitutes reasonable compensation for the actual, necessary services rendered by Merrill Lynch to the Debtors in this case...." Based upon this stipulation and the court's own findings, $350,000 will constitute reasonable compensation for Merrill Lynch's services.

### B. *The Request For Expenses Will Be Reduced.*

■ The amended application includes the invoices, timesheets, and expense itemizations of each of the two law firms Merrill Lynch employed. Of the $108,736.99 Merrill Lynch requests in expense reimbursement, $67,738 are for the legal fees of its Texas counsel, Thompson & Knight. Most of Thompson & Knight's fees relate to work performed on retention and proof of claim matters. By way of background, Merrill Lynch filed a proof of claim on January 14, 1993 for pre-petition obligations due under the engagement agreement. Both the Unsecured Creditors Committee and Edisto filed objections to this claim. Merrill Lynch ultimately withdrew the claim. Docket no. 589.

*None* of the time relating to retention or proof of claim matters is compensable. As discussed in Section I., the amended retention application sought, and this court approved only those expenses Merrill Lynch incurred *in connection with its financial advisory services.* The time counsel expended assisting Merrill Lynch on retention and proof of claim matters has nothing to do with the advisory services for which Edisto retained Merrill Lynch in its Chapter 11 case. Moreover, the substantial number of hours Thompson & Knight billed concerning the terms of Merrill Lynch's retention and compensation, and preparing a proof of claim provided absolutely no benefit to the debtors' estates. *Accord, In re Columbia Gas System,* 150 B.R. 553, 555 (Bankr.D.Del.1992) (disallowing in full financial advisor's legal fees with respect to its own retention).

In determining the amount of compensable time Thompson & Knight performed, the court will consider that firm's timesheets month by month. For services rendered ending October 31, 1992, $7,254.00 is request-

ed; $5,840.50 relate to pre-petition time entries. Another $835.00 relate to retention matters. An entry by M.L. Bengtson on October 10, 1992 for $58.50 contains insufficient detail to determine if it was for a compensable activity. This reduces the requested $7,254.00 to $520.00.

For services rendered through November 30, 1992, entries on November 3rd, 4th, 13th, and 16th and corresponding to $409.00 contain insufficient detail. Fifteen other entries in this month *do* contain sufficient detail to determine that the activities relate to noncompensable matters (either a retention or proof of claim activity). This reduces the November bill from $3,685.50 to $1001.50.

For services rendered through December 31, 1992, all 22 of the entries relate to noncompensable matters. This eliminates the December bill of $7,457.50.

For services rendered through January 31, 1993, 25 entries in full relate to noncompensable matters. Another two in part relate to noncompensable matters. The remaining compensable time for this month is $1,475.00.

■ For services rendered after this date, the timesheets contain activity descriptions but no time entries whatsoever. This fact in and of itself would be sufficient to deny in full the requested amount of $39,730.50 relating to this time period. Moreover, a review of the descriptions reveals that most of the activities were again spent on retention and proof of claim matters. The court will allow $6,500.00 in connection with this time period. In the aggregate, these observations reduce the requested reimbursement of Thompson & Knight's legal fees from $67,738 to $9,496.50.

■ Of Merrill Lynch's overall request for expense reimbursement of $108,736.99, $5,384.66 is for the expenses of Thompson & Knight, in connection with its work. Inexplicably, Thompson & Knight includes in this amount $3,320.85 in fees and costs of the local counsel of Merrill Lynch, Bayard Handelman & Murdoch. Merrill Lynch has separately requested reimbursement for the fees and costs of this law firm. Moreover, since the underlying work of Thompson & Knight was predominantly noncompensable, the

$5,384.66 expense amount will be reduced to $500.00.

■ Of the $108,736.99 Merrill Lynch requests in expense reimbursement, $3,797.00 are for the legal fees of its local counsel, Bayard Handelman & Murdoch. An additional $862.34 are for local counsel's expenses. Of the $3,797.00 amount, all but $425.00 relate to retention or proof of claim matters. Only $425.00 of this amount is thus allowed.

The $425.00 relates to the preparation of Merrill Lynch's expert witness. Upon review of the itemization of Bayard Handelman's expenses, only $200.00 (rental of a conference room) conceivably could relate to this activity. The remainder of the expenses are disallowed.

In summary, Merrill Lynch's request for reimbursement of its legal fees and expenses is allowed in the amount of $10,621.50. Merrill Lynch has also sought reimbursement of other expenses totaling $30,954.99. This amount will be allowed.

An order in accordance with this Memorandum Opinion is attached.

### ORDER

AND NOW, November 2, 1993, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1. Merrill Lynch's application for compensation is allowed in the amount of $350,000.

2. Merrill Lynch's application for reimbursement of expenses is allowed in the amount of $41,576.49.