**In re DN ASSOCIATES d/b/a Atlantic Motor Inn, Debtor.**

**Bankruptcy No. 91–20417.**

United States Bankruptcy Court,
D. Maine.

Feb. 23, 1994.

James D. Poliquin, Norman, Hanson & DeTroy, Portland, ME, for debtor.

Robert J. Keach, Verrill & Dana, Portland, ME, for Casco Northern Bank and Second Maine Realty Corp.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

Following successful appellate defense of this court's August 20, 1992, fee awards, Norman, Hanson & DeTroy ("NH & D"), the debtor's counsel, and the Pilot Group ("Pilot"), the debtor's financial advisor, filed supplemental fee applications seeking fees and expenses associated with the appeals and interest on their approved fees. Casco Northern Bank, N.A. ("Casco") and Second Maine Realty Corporation ("Second Maine") object.

For the reasons set forth below, I conclude that, notwithstanding substantial consummation of the reorganization plan shortly after entry of the confirmation order, jurisdiction remains to consider the applications. Further, although the applicants are entitled to interest on their fee awards, the fees and expenses they incurred on appeal are not allowable as administrative expenses.[1]

### Procedural History

On April 17, 1992, a joint creditor plan of reorganization proposed by, among others, Casco, DN's first mortgagee and principal Chapter 11 antagonist, was confirmed.[2] Under the plan, Second Maine, a Casco subsidiary, succeeded to all of DN's assets and obligations. The plan provided for full payment of all priority claims, including allowed professional fees and expenses, on its effective date, thirty days after confirmation.[3]

---

1. The facts are undisputed. The matter has been submitted on the briefs. This memorandum sets forth conclusions of law in accordance with Fed. R.Bankr.P. 9014 and 7052.

2. Background is available in this court's fee award decision. *In re DN Associates*, 144 B.R. 195 (Bankr.D.Me.1992); *aff'd* 160 B.R. 20 (D.Me.1993); *aff'd* 3 F.3d 512 (1st Cir.1993).

3. The debtor's accrued operating revenues were to be used to pay administrative expenses. To the extent that those revenues proved insufficient, the plan bound Casco to lend Second Maine necessary funds.

On August 20, 1992, I approved compensation for services and reimbursement for expenses to NH & D and Pilot. *In re DN Associates*, 144 B.R. at 204.[4] As successful appellees in the district court and in the court of appeals, neither NH & D nor Pilot requested an award of attorneys' fees.[5] It is unclear whether the appellate courts awarded costs to NH & D or to Pilot, although they were entitled to them had they sought them. *See* Fed.R.App.P. 39(a) (if a judgment is affirmed, unless otherwise ordered, costs shall be taxed against the appellant). *See also* Fed.R.App.P. 39(e) (district court costs shall be taxed as costs of the appeal in favor of the party entitled to costs).

On October 21, 1993, two appeals and approximately fourteen months after this court's order approving their fee applications, Second Maine paid NH & D and Pilot. NH & D and Pilot then filed supplemental fee applications here, seeking allowance of the fees and expenses associated with defense of Casco's appeals as administrative expenses under §§ 330(a) and 503(b)(2).[6] They also ask that this court award them interest from the date of the fee award orders to the date of payment.

## Discussion

■ As elsewhere, satellite litigation over fees is discouraged in bankruptcy cases. *In re McLaughlin*, 96 B.R. 554, 561 (Bankr. E.D.Pa.1989). Here, the satellite's launch was fueled by a heated confirmation battle. Casco's appeals boosted it on an extended flight. The sputnik did not burn up on reentry from the court of appeals. Rather, it remains aloft and, with the supplemental applications, has launched its own orbiters.

### 1. *Jurisdiction.*

■ Jurisdiction is a threshold issue.[7] Although a final decree has yet to enter, the plan was substantially consummated[8] immediately following the April 17, 1992, confirmation order. Casco asserts that "once the estate property was transferred and payments to other creditors completed under the confirmed plan ... this Court was divested of jurisdiction to adjudicate [the] fee application...."[9] I disagree.

The plan was confirmed well before this court had heard and decided the debtors' professionals' fee applications. By that time Second Maine's succession to DN was complete and plan payments had been made. If the law were as Casco urges, this court would have been without jurisdiction to determine fees, a function basic to the role of the reorganization court, *see In re Sousa*, 46 B.R. 343, 346 (Bankr.D.R.I.1985); in the first instance, simply because the confirmed plan

4. The August 20, 1992 order approved fees of $55,748.00 and expenses of $7,150.55 for NH & D and $17,813.00 in fees and $195.78 in expenses for Pilot. NH & D had previously been awarded $35,241.52 in fees and expenses and Pilot had been awarded $13,865.93 in fees and expenses. *In re DN Associates*, 144 B.R. at 197 nn. 4 & 7.

5. *See e.g.*, Fed.R.App.P. 38; *Fidelity Guarantee Mortgage Corp. v. Reben*, 809 F.2d 931 (1st Cir. 1987).

6. Unless otherwise stated, all references to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

7. Casco and Second Maine raised the issue of jurisdiction, albeit perfunctorily. As a court of limited jurisdiction, a bankruptcy court must consider and confirm its subject matter jurisdiction before proceeding to a decision. *In re Recticel*, 859 F.2d 1000, 1002 (1st Cir.1988), *vacated on other grounds, In re Nineteen Appeals*, 982 F.2d 603 (1st Cir.1992). *See also In re Greenley*

*Energy Holdings of Pennsylvania*, 110 B.R. 173, 179 (Bankr.E.D.Pa.1990) (citing cases).

8. The Code defines "substantial consummation" of a Chapter 11 plan as:

 (A) transfer of all or substantially all of the property proposed by the plan to be transferred;

 (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

 (C) commencement of distribution under the plan.

 11 U.S.C. § 1101(2).

9. Memorandum in Support of Objections of Second Maine Realty Corp. and Casco Northern Bank, N.A., to the Supplemental Applications of Attorney and Financial Advisor to the Debtor for Allowance of Compensation and Reimbursement of Expenses, Court Doc. No. 235, at 7.

was substantially consummated in a thrice. That is not the law.

■ The scope of the bankruptcy court's jurisdiction shrinks upon confirmation. *In re Jr. Food Mart of Arkansas, Inc.*, 161 B.R. 462, 463 (Bankr.W.D.Ark.1993). *See e.g.*, 11 U.S.C. § 1141. Upon substantial consummation the court's role is further diminished. For example, a reorganized debtor loses its ability to modify the plan. 11 U.S.C. § 1127(b). Two cases relied upon by Casco and Second Maine say no more than that. *In re Fansal Shoe Corp.*, 119 B.R. 28 (Bankr. S.D.N.Y.1990); *In re Hayball Trucking, Inc.*, 67 B.R. 681 (Bankr.E.D.Mich.1986). A third, *In re Greenley Energy Holdings of Pennsylvania*, holds that a bankruptcy court's post-confirmation jurisdiction does not extend to disputes that do not affect consummation of the plan when the order of confirmation does not reserve it. 110 B.R. at 182.

We track a different trajectory. To begin, the confirmation order incorporates the plan's retention of jurisdiction provisions, including the following:

> After confirmation of the Plan, and until the Consummation of the Plan, and the closing of the estate of DN Associates, the Court shall retain in the case jurisdiction for all purposes provided in the Bankruptcy Case, including without limitation, jurisdiction for the following purposes:
>
> > 1. To allow or disallow claims of interests impaired or unimpaired by this Plan as provided in Section 502 of the Bankruptcy Code ... and to hear and determine all priority claims and claims for costs and expenses of administration;
> >
> > 2. To enable Casco and the Kennys, and all other parties in interest, to comply with and enforce compliance with this Plan....[10]

The plan defines "consummation" as "the accomplishment of all things contained in or provided for in the Plan, and the entry of a final decree by the Court pursuant to Bankruptcy Rule 3022."[11]

The pending applications, initiated before "consummation" as the plan defines it, are efforts to enforce plan provisions governing determination and payment of administrative expenses. Thus, they fall squarely within the scope of post confirmation jurisdiction reserved to the bankruptcy court by the confirmation order.

■ That the applications are within the jurisdiction reserved to the bankruptcy court by the confirmation order, although significant, is not determinative. *See, e.g., In re BankEast Corp.*, 132 B.R. 665, 667 (Bankr. D.N.H.1991); *In re Greenley Energy Holdings of Pennsylvania*, 110 B.R. at 181; *In re Tri–L Corp.*, 65 B.R. 774, 779 (Bankr.D.Utah 1986); *In re Allied Technology, Inc.*, 25 B.R. 484, 499 (Bankr.S.D.Ohio 1982). The plan and confirmation order cannot create jurisdiction where none exists. *See In re BankEast Corp.*, 132 B.R. at 667. *See generally* 4 *Norton Bankruptcy Law and Practice* 2d (hereinafter "*Norton*") § 95:6 at 95–9, 95–10 (1993).

■ But allowance of administrative fees and expenses is fundamentally within this court's statutory jurisdiction, *e.g.*, 11 U.S.C. §§ 330, 503, 507(a)(1); 28 U.S.C. §§ 157(b)(2)(A), 1334; and exercise of post confirmation jurisdiction over such issues is entirely proper. 11 U.S.C. § 1142. *See In re Tri–L Corp.*, 65 B.R. at 778. *See generally Norton, supra*, § 95:7 (court retains jurisdiction over activities such as claims resolution, resolving disputes which affect operation of the plan as between interested parties, and resolving disputes arising under Code provisions that contemplate post confirmation activity).

Determining administrative professional fees and ordering their payment represents an aspect of plan consummation and compliance particularly appropriate to the bank-

---

**10.** Amended Joint Plan of Casco Northern Bank, N.A., and Laurence A. Kenny and Patricia A. Kenny for the Reorganization of DN Associates (hereafter "Amended Joint Plan"), Court Doc. No. 172 at 8–9.

**11.** *Id.* at 2.

ruptcy court's role and expertise.[12] This dispute remains within the bankruptcy court's jurisdictional gravity.

### 2. Fees.

#### a. Fee Awards in the Larger Universe.

Analysis begins with a brief review of principles governing fee allocations generally, before moving on to their place in the peculiar context of bankruptcy reorganizations.

12. Exercising jurisdiction over bankruptcy fee disputes does not amount to maintaining the reorganized entity in extended "tutelage." Cf. North American Car Corp. v. Peerless Weighing & Vending Mach. Corp., 143 F.2d 938 (2d Cir.1944) (disapproving extensive post-confirmation supervision of debtor's business); In re Ambassador Hotel Corp., 124 F.2d 435 (2d Cir.1942). See also In re Jr. Food Mart of Arkansas, Inc., 161 B.R. at 463 (after confirmation the parties are liberated "to go about their business without further bankruptcy court supervision or approval") (quoting In re Cary Metals, 152 B.R. 927, 932 (Bankr.N.D.Ill.1993).

In re BankEast held that after confirmation the bankruptcy court appropriately may decline to exercise jurisdiction over matters other than those that might "raise obstacles to substantial consummation." 132 B.R. at 668. BankEast recognizes that broader post-confirmation jurisdiction might be retained. Id.

13. The First Circuit explains the doctrine as follows:

In its paradigmatic formulation, the common fund doctrine permits the trustee a fund, or a person preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including counsel fees from the fund itself, or alternatively, from the other beneficiaries. See Boeing Co. v. Van Gemert, 444 U.S. 472 [, 100 S.Ct. 745, 62 L.Ed.2d 676] (1980); Alyeska, 421 U.S. at 257 [, 95 S.Ct. at 1621]; Catullo v. Metzner, 834 F.2d 1075, 1083 (1987). Although common fund cases are sui generis, they typically evidence certain characteristics. These include ease in identifying the persons or classes of persons, benefitted by the recovery; ease in tracking the benefit flow; the ability to trace benefits with enough accuracy that, in the end, the flow chart inspires confidence; and reliability that the costs and benefit are fairly proportionate to one another. See Boeing, 444 U.S. at 478–79 [, 100 S.Ct. at 749–50]; Alyeska, 421 U.S. at 265 n. 39 [, 95 S.Ct. at 1626 n. 39].

In re Nineteen Appeals, 982 F.2d 603, 606 (1st Cir.1992). See also Catullo v. Metzner, 834 F.2d 1075, 1083 (1st Cir.1987).

14. The substantial benefit rule is conceptually akin to, but exhibits differences from, the common fund doctrine:

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The general rule is qualified only by a few judicially-created exceptions, viz the "common fund" doctrine; [13] the "substantial benefit" rule; [14] the "contempt" sanction; [15] and the "bad faith" exception; [16] by statutory exceptions; [17] and by

The substantial benefit rule does not usually apply to cases involving a fund. When litigation does not focus on or only indirectly affects an existing fund, the substantial benefit exception applies. In litigation seeking both monetary and nonmonetary awards, either one or both of the doctrines apply. Neither doctrine, however, imposes personal liability on the beneficiaries. Because a fund is not available in substantial benefit cases, the court must have control over an entity composed of the beneficiaries to charge the fee award.

Vargo, The American Rule on Attorney Fee Allocations: The Injured Person's Access to Justice, 42 Am.U.L.R. 1567, 1581–82 (1993) (hereinafter "Vargo") (footnotes omitted).

15. See, e.g., Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 427–28, 43 S.Ct. 458, 466, 67 L.Ed. 719 (1923) (court has discretion to award attorneys' fees as a penalty when a party must enforce its rights under a decree by bringing contempt proceedings).

16. [A] court may assess attorneys' fees for the 'willful disobedience of a court order ... as part of the fine to be levied on the defendant [,] Toledo Scale Co. v. Computing Scale Maier Brewing Co., 261 U.S. 399, 426–28 [, 43 S.Ct. 458, 465–66, 67 L.Ed. 719] (1923),' Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718 [, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475 (1967) ]; or when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc., 417 U.S. 116, 129 [, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703] (1974).

Alyeska, 421 U.S. at 258–259, 95 S.Ct. at 1622–23. See also Natural Resources Defense Counsel, Inc. v. EPA, 484 F.2d 1331 (1st Cir.1973) (fees awards are imposed to punish frivolous or ill-motivated litigation) (citing Knight v. Auciello, 453 F.2d 852 (1st Cir.1972)).

17. See, e.g., 42 U.S.C. § 1988 (civil rights cases). See also Furtado v. Bishop, 635 F.2d 915, 918 (1st Cir.1980) (discussing fee shifting for civil rights cases). One commentator has noted over 200 federal and nearly 2000 state fee shifting statutes and has described their major purposes

the law of contract.[18]

 Outside the exceptions, the American Rule governs. Litigants, whether or not successful, may expect to bear their own expenses of litigation, including their legal fees, at trial and on appeal.[19] The courts do not have "roving authority" to award counsel fees whenever they might consider it warranted. *Roosevelt Campobello Intern. Park v. Environmental Protection Administration*, 711 F.2d 431, 435 (1st Cir.1983), quoting *Alyeska Pipeline*, 421 U.S. at 263, 95 S.Ct. at 1624.

b. *Fee Awards in the Bankruptcy Sphere.*

Whether professionals retained by a debtor in possession are entitled to administrative compensation for legal fees associated with fee appeals is an open question in this circuit.[20] Elsewhere, the cases are divided. One commentator has summarized the authorities as follows:

> Some courts permit attorneys to receive compensation for services rendered in successfully litigating the merits of their fee applications *and appealing awards. Nunley v. Jessee*, 92 B.R. 152 (Bankr.W.D.Va. 1988). Other courts deny such requests where the attorneys unsuccessfully defend in that litigation. *See Riverside–Linden Investment Co.*, 39 [89] B.R. 848 (Bankr. S.D.Cal. 1988).

2 *Collier on Bankruptcy* ¶ 330.05[6] at 47 (15th ed. 1993).[21]

 The pending applications do not present circumstances that fall within the non-statutory exceptions to the American Rule. The fee shift sought here is not of the garden variety. Allowing the compensation and reimbursement requested as an administrative expense would not shift the costs of litigation from one disputant to another, but from one to the bankruptcy estate.[22] In any event, this is not an appropriate instance for awarding fees under the bad faith exception.[23] Contempt issues are absent. Neither

as being "to compensate the prevailing plaintiff, promote public interest litigation, punish or deter the losing party for misconduct, or prevent abuse of the judicial system." Vargo, *supra*, at 1588.

18. *Northern Heel Corp. v. Compo Industries*, 851 F.2d 456, 474 (1st Cir.1988). *See also* Vargo, *supra*, at 1589.

19. Fees may, however, be awarded on appeal under Fed.R.App.P. 38's provisions authorizing awards of "just damages and single or double costs" to an appellee if it determines that the appeal was frivolous. "[D]amages are awarded by the court in its discretion in the case of a frivolous appeal as a matter of justice to the appellees and as a penalty against the appellant." Advisory Committee Notes on Appellate Rules (1967). *See Cruz v. Savage*, 896 F.2d 626, 634 (1st Cir.1990).

20. This case involves applications for appellate legal fees incurred by two different estate professionals: debtor's counsel and debtor's financial advisor. As to the former, the fees were generated by counsel directly retained by the estate. As to the latter, the fees were generated by attorneys retained by the advisor and, therefore, the advisor's fees are allowable as an administrative expense, if at all, as "reimbursement for actual, necessary expenses" under § 330(a)(2).

As discussed below, the difference is not without significance. But for purposes of introductory discussion, reference is most often to fees incurred by attorneys in connection with their own fee awards. The upcoming fork in our analytical path will be well marked, and re-marked upon, when we reach it.

21. The cases disagree in the rationales they employ. Adoption of one or the other will result in different outcomes in some circumstances. As the quotation from *Collier* implies, the holdings of the few published cases in this area may be synthesized into a simple rule ("winners win, losers lose"). Our case calls for considering whether a modification of that rule ("winners sometimes lose") is appropriate.

22. As a practical matter, under plan terms that require Second Maine, with Casco's backing, to pay allowed compensation in full, direct fee shifting would be the result. But the plan incorporates principles of administrative compensation to qualify Second Maine's duty of payment. Thus, I must analyze the issues before me no differently than I would in considering any claim for administrative compensation under §§ 330(a)(1) and 503(b).

23. NH & D's memorandum argues that Casco's appeal stood little chance of success under the applicable "abuse of discretion" standard of review and that the court of appeals considered the merits of Casco's appeal sufficiently "straightforward and easily resolvable" as to render consideration of standing issues unnecessary. *In re DN Associates*, 3 F.3d at 515. However, neither the district court or the court of appeals imposed sanctions, which might have included fees, as

do the common fund or substantial benefit rules apply.[24] And the confirmed Chapter 11 plan includes no clause allocating or shifting fees generated in defending appeals or executing the plan. To determine whether NH & D and Pilot are entitled to the fees they seek, I must first look to pertinent Code provisions and to the cases applying them.

Section 503(b)(2) establishes administrative priority for "compensation and reimbursement awarded under § 330(a)." Section 330(a) provides that, after notice and a hearing, the court may award fees and expenses to estate professionals and the debtor's attorney.[25] The applicants urge that granting

them the compensation they seek is a reasonable and appropriate application of the principles underlying § 330(a).

### i. *The Nucorp Stretch: Compensating Professionals for Successful Fee Appeals.*

Some courts view compensating professionals for successful fee appeals as a logical extension of the principle enunciated in *In re Nucorp*, 764 F.2d 655 (9th Cir.1985). In *Nucorp*, the Ninth Circuit held that to refuse to compensate bankruptcy counsel for time and effort spent in preparing attorney fee applications would, in effect, reduce the fees to a level below the full compensation called

---

they might have under the rules. Fed.R.App.P. 38; Fed.R.Civ.P. 11. *See Natasha, Inc. v. Evita Marine Charters, Inc.*, 763 F.2d 468, 472 (1st Cir.1985). *See also In re Sullivan Co.*, 843 F.2d 596, 599 (1st Cir.1988) (discussing application of Fed.R.Civ.P. 38 in bankruptcy fee appeal context); *In re BWL, Inc.*, 123 B.R. 675, 686 (D.Me. 1991) (Rule 38); *In re Film Ventures, Inc.*, 75 B.R. 250 (9th Cir.Bankr.1987).

If sanctions can properly be awarded for prosecuting a frivolous appeal, the court before which the appeal is prosecuted is the court to whom a request for sanctions should be made. *See Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 392 (2d Cir.1985), *cert. denied* 475 U.S. 1084, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986); *Cheng v. GAF Corporation*, 713 F.2d 886, 891–92 (2d Cir.1983). Notwithstanding bankruptcy judges' "pervasive and extended" involvement in the cases before them, bankruptcy courts should not be excepted from this rule. *In re Emergency Beacon Corp.*, 790 F.2d 285, 288 (2d Cir.1986). Permitting the trial court to impose sanctions against an attorney who pursues an appeal the court considers to have been frivolous could deter legitimate appeals. *Id.*

**24.** These doctrines can operate within bankruptcy cases in appropriate circumstances. *See, e.g., In re Poole, McGonigle & Dick, Inc.*, 796 F.2d 318, 324 (9th Cir.1986) (substantial benefit case; creditor might be entitled to fees, including fees on appeal, if on remand it was successful in subordinating shareholder claims, thereby creating additional funds for creditors), *modified*, 804 F.2d 576 (9th Cir.1986). One can readily envision adversary proceedings or contested matters where the common fund doctrine might come into play. *See, e.g., Liberty Mutual Insurance v. Elgin Warehouse & Equipment*, 4 F.3d 567 (8th Cir.1993) (recognizing support for the proposition that where services by attorneys in bankruptcy case "directly result in creation or preservation of a fund," the common fund doctrine might apply); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir.1989) (approving

award of attorney fees based on common fund doctrine for representation of two bankruptcy estates in adversary proceedings to recover amounts owed). *But see In re Chicago, Milwaukee, St. Paul & Pacific R.*, 840 F.2d 1308, 1318 n. 9 (7th Cir.1988) ("we also agree … that the 'common fund' doctrine does not operate to authorize the payment of fees or costs *from the bankruptcy estate*") (emphasis in original). At least one court has construed § 330(a) by analogizing to state probate code provisions relating to payment of fees. *See In re Hers Cosmetics, Inc.*, 114 B.R. 240, 243 (Bankr.C.D.Cal.1990) (referring to fee awards under state probate code and "in both cases the fee is set by the court pursuant to statutory authorization and paid out of an estate"), (citing *Estate of Trynin*, 49 Cal.3d 868, 264 Cal.Rptr. 93, 782 P.2d 232 (1989) (state probate case awarding fees for appeal based on concern that fee could otherwise be diluted)).

Sections 330(a) and 503(b) do reflect concepts consistent with those underlying the common fund and substantial benefit rules. After all, a basic tenet of administrative compensation in bankruptcy is that the efforts of bankruptcy professionals—or others, *e.g.*, § 503(b)(3)—operate for the benefit of the estate's constituencies.

**25.** (a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328 and 329 of this title, the court may award to a trustee, to an examiner, or a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

for by the Code. 764 F.2d at 662. *See* 11 U.S.C. § 330(a)(1); *Norton*, ¶ 13.22 at 32 (compensation to be commensurate with cost of services in non-bankruptcy context). It noted that the Code and rules require extensive, itemized fee applications as a precondition to payment, thus requiring counsel to spend even more time and effort in application preparation than may be required under statutory fee shifting statutes. *Nucorp*, 764 F.2d at 658. The court concluded that it would be "both inconsistent with the express policy of the Bankruptcy Reform Act and fundamentally inequitable to impose substantial requirements on bankruptcy counsel as prerequisites to their obtaining compensation while simultaneously denying compensation for the efforts necessary to comply with those requirements." *Id.* at 659 (citing *Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088, 1093 (5th Cir.1980); and *In re Braswell Motor Freight Lines, Inc.*, 630 F.2d 348, 351 (5th Cir.1980)).[26]

*Nucorp's* language is broad, but its holding is narrow. Although its dictum states that bankruptcy counsel should be compensated for time spent in "preparing *or litigating*" fee applications, it held only that "bankruptcy counsel are entitled to compensation for the time and effort spent in preparing fee applications." *Id.* at 662 (emphasis added). *Nucorp* does not discuss compensability of fees incurred in litigating fee awards on appeal.[27]

One bankruptcy court has articulated the reasons *Nucorp's* holding has been interpreted to embrace administrative compensation for attorney's fees incurred in successfully defending a fee award on appeal. *In re Hers*

*Cosmetics Corp.*, 114 B.R. 240 (Bankr. C.D.Cal.1990). Holding that a creditor can be reimbursed for attorney's fees incurred in defending a § 503(b)(3)(D) administrative expense award, and that their counsel could similarly be compensated for defending his § 503(b)(4) fee award, the court focused on *Nucorp's* concern that in such circumstances failure to award fees on appeal would unfairly dilute an initial fee award.

In summary, both case law and logic support the premise that reimbursement for reasonable attorney's fees incurred in defending a fee award on appeal should be available. The argument that a fee award is inappropriate in this circumstance because the estate does not benefit from such ongoing litigation may have surface appeal, but it lacks substance after analysis. Congress made the decision under § 330 and § 503(b)(4) to reimburse attorney's fees from the estate. In the case of § 330, Congress obviously felt that it was important to pay attorneys from the estate on a priority basis to provide an incentive for attorneys to represent debtors. Congress also believed it important to reimburse creditors under § 503(b)(4) for their attorney's fees incurred in providing a substantial benefit to the estate. In both situations the underlying purpose of these provisions would be subverted if fee awards could be diluted through the appeal process. Creditors could negotiate reductions in these fee awards knowing full well that the attorney is in a no-win situation. Even if the attorney prevails, he or she will have in effect financed the litigation without any hope of surviving it whole. This makes

(2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330.

**26.** *Nucorp* noted that, consistent with § 330's objectives, detailed fee applications enable parties-in-interest, as well as the court, to review the services rendered to ensure that "actual, necessary" services are reasonably compensated. *Id.* at 659. *See* 11 U.S.C. § 330(a)(1). The panel analogized to fee shifting statutes, such as 42 U.S.C. § 1988 and Title VII, 42 U.S.C. § 2000e–5(k), under which it had awarded fees for time devoted to fee dispute litigation. *Id.* at 660.

**27.** *Nucorp* cited one civil rights case in which fees were awarded in connection with "the pur-

suit or the defense of an appeal" respecting a fee award. *Id.* at 660 (citing *Southwest Legal Defense Group v. Adams*, 657 F.2d 1118 (9th Cir. 1981)). The First Circuit has done the same in a related context. *See Segal v. Gilbert Color Systems, Inc.*, 746 F.2d 78, 87 (1st Cir.1984) (approving fee award for time spent successfully defending fee award rendered under 28 U.S.C. § 1875). But *Nucorp's* remand described the district court's role as consideration of reasonable compensation for counsel's actual, necessary services rendered in connection with "preparation and presentation" of fee applications. 764 F.2d at 663. Had the *Nucorp* panel concluded that the fee applicant, who had succeeded on appeal, was entitled to an award of fees for its appellate work, it could have awarded the fees

absolutely no sense. If that was the inevitable result, debtors and creditors would have substantial difficulties in retaining competent counsel in bankruptcy cases. Certainly, Congress did not have that in mind.

*Id.* at 244.

Consistent with this rationale, courts that have awarded compensation for litigating fee appeals have done so only when the fee applicant was successful. *See, e.g., In re Manoa Finance Co., Inc.,* 853 F.2d 687 (9th Cir.1988) (creditors' committee counsel appealed bankruptcy court's refusal to consider bonus; court of appeals reversed and remanded, commenting that counsel would be entitled to fees for work on appeal only if ultimately successful in obtaining bonus);[28] *Nunley v. Jessee,* 92 B.R. 152 (W.D.Va.1988) (reversing bankruptcy court's refusal to consider award of fees for successful defense of fee award on appeal).[29] *See also In re U.S. Golf Corp.,* 639 F.2d 1197, 1208 (5th Cir.1981) (awarding fees on appeal to successful trustee's counsel without discussion).[30] *Cf. In re Riverside–Linden Investment Co.,* 945 F.2d 320 (9th Cir.1991) (counsel not entitled to compensation for opposing objections, to no avail, before both the bankruptcy court and

on appeal);[31] *In re Great Sweats, Inc.,* 113 B.R. 240 (E.D.Va.1990) (distinguishing *Nunley v. Jessee, supra,* and refusing to approve administrative compensation for work expended in unsuccessful fee award appeal).

Courts approving such awards are concerned that compensation already determined to be reasonable will be "diluted" by the expense of appeal. *See, e.g., In re Hers Cosmetics Corp.,* 114 B.R. at 247. *Cf. In re Nucorp, Inc.,* 764 F.2d at 661 (expressing concerns for dilution occasioned by expense of preparation and presentation of fee application).

### ii. *Considering the Benefit of Services Rendered.*

There is another angle. Some courts have analyzed the issue by considering whether work performed on fee appeals benefits the estate and, thus, whether it is administratively compensable. Viewing the question through a "benefit to the estate" lens may lead to the conclusion that legal work on fee appeals benefits the professionals involved, rather than the estate. Therefore, although preparation and presentation of fee applications is compensable because it is required by the Code and permits intelligent assess-

---

directly or, alternatively, included that issue within the scope of its remand.

**28.** *Manoa* noted parallels between civil rights fee shifting statutes and administrative fee awards in bankruptcy, but acknowledged important differences, too. Congress intended that fees in bankruptcy "replicate exactly" what fees could be earned through private arrangements; § 330 includes no "prevailing party" provision; and the source of payment for administrative fees in bankruptcy, *i.e.* the estate, is "unique." 853 F.2d at 691. The court observed that the notion of "prevailing party" is alien to bankruptcy reorganization proceedings, but, notwithstanding that observation, it adopted a "prevailing party" test to decide the question of appellate fees entitlement in the case before it. *Id.* at 691.

**29.** *Nunley's* rationale is similar to *Manoa's*. The court relied on *Nucorp's* analogy to statutory fee shifting provisions and on the close nexus between fees generated *presenting* a fee application and those generated in *defending* one on appeal. The district court eschewed "benefit to the estate" as the *sine qua non* of administrative compensability and stated: "I do not see that litigation over an already established fee award on appeal is more remote from the purposes of the debtor's estate than the preparation and presen-

tation of the fee application in the first instance." 92 B.R. at 154.

**30.** *U.S. Golf,* although widely cited for other propositions, has gained no following on the issue of fee awards for appellate work.

**31.** The *Riverside–Linden* court commented:

We are presented with facts entirely different from those before the *Nucorp* court. Here, the fees incurred in preparing and presenting the final fee application were awarded to E & H by the Bankruptcy Court as *Nucorp* and Section 330(a) require. The fees at issue here are the additional fees incurred opposing Crake's objection to the fee application. Unlike the presentation and preparation of the fee application itself, there is no statutory or Bankruptcy Rule requirement that attorneys for the debtor oppose objections to the fee application. We agree with the BAP that '*Nucorp* does not provide a blanket allowance of fees for any and all services related to the fee application.' [*In re Riverside–Linden Investment Co.,*] 111 B.R. [298] at 301 [(9th Cir. BAP 1990)].

945 F.2d at 323. The court commented that fees for any and all services related to fee applications could encourage applicants to press meritless fee applications with the expectation that their efforts in pursuing such applications would be compensated in full. *Id.*

ment of the reasonableness and necessity of the applicant's efforts, prosecuting or defending fee appeals is not.[32]

In *Grant v. George Shumann Tire & Battery Co.*, 908 F.2d 874 (11th Cir.1990), the Eleventh Circuit considered a trustee's attorney's request for an award of fees generated defending the debtor's appeal of his fee award. In the initial appeal, the district court had vacated the award and remanded the matter for a *de novo* determination. Subsequently, the bankruptcy court reinstated the original award, but refused compensation for prosecuting the appeal because it did not consider that the attorney "prevailed" on appeal. 908 F.2d at 882.[33] The Eleventh Circuit declined to engraft a "prevailing party" test to § 330.

As discussed *supra*, section 330 is "not the 'usual' sort [of fee-shifting statute] contemplated by *[Pennsylvania v. Delaware Valley Citizens' Council for Clean Air] Delaware Valley II* [, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ]." *Matter of Baldwin–United Corp.*, 79 B.R. 321, 346 (Bkr.S.D.Ohio 1987). There is no prevailing party provision in section 330. *In re Manoa*, 853 F.2d at 691. "The concept of a prevailing party in bankruptcy cases is ... incongruous. While a debtor or a creditor may prevail in one or more of the many disputes that arise in the course of a typical Chapter 11 reorganization, almost everyone loses something." *Id.* The language of section 330 does not authorize the court to award attorney's fees to the prevailing party. Rather, the statute authorizes the court to award "reasonable compensation for actual, necessary services rendered...." 11 U.S.C.A. § 330(a)(1).

908 F.2d at 882 (brackets and ellipses in original). The question of administrative compensability is "whether the services rendered were reasonable and necessary to the administration of the estate." *Id.* at 883 (citing *In re Temple Retirement Community*, 97 B.R. 333, 338 (Bankr.W.D.Tex.1989)). Because the only issue appealed was counsel fees, the appeal conferred "absolutely no benefit to the estate, the creditors, or the debtor." *Id.*

*Grant's* rationale prevails in the Eleventh Circuit, *e.g.*, *In re Port Royal Land & Timber Co.*, 924 F.2d 208 (11th Cir.1991) (eschewing "prevailing party" requirement for administrative fee award); *In re McClanahan*, 137 B.R. 73 (Bankr.M.D.Fla.1992) (denying fees for time spent on motion for rehearing on fee award); and its rule is consistent with results elsewhere. *See, e.g., In re Mulberry Phosphates, Inc.*, 151 B.R. 948, 951 (M.D.Fla. 1992) (remand on fee applicant's successful appeal of fee award limited to charges disallowed by bankruptcy court); *In re Wildman*, 72 B.R. 700, 731 (Bankr.N.D.Ill.1987) (denying fees associated with motion for reconsideration of fee award).

Employing *Grant's* analysis here, one could conclude that, although NH & D and Pilot were successful on appeal, that success was personal to them. It did not benefit DN's estate in the slightest and, thus, appeals fees and expenses should not be compensated by the estate.

iii. *Who Pays the Freight?*

 In this circuit, debtor's attorneys are entitled to reasonable compensation for "actual, necessary" services. *See In re DN*

---

**32.** The parties have cited, and the court's research has uncovered, no cases in which benefit to the estate analysis led to a denial of compensation for services performed by a successful fee appeal participant. Thus, as noted above, the holdings of cases employing that rationale can be reconciled with the overlay of a prevailing party test. *See supra* note 21.

Of course, a party who prevails on appeal in challenging fees may be seen as making a substantial contribution in a case by reducing administrative expenses and, in some circumstances might be compensated for the expense of obtaining that benefit. *See* § 503(b)(3)(D). *Cf. In re Poole, McGonigle & Dick*, 796 F.2d at 324

(claims subordination); *In re 9085 E. Mineral Office Building, Ltd.*, 119 B.R. 246, 255 (Bankr. D.Colo.1990) (granting creditor compensation for successfully objecting to fee application of debtor's counsel thereby benefitting estate). As discussed below, here we deal with applicants who were successful in the appellate courts, but whose success did not redound to the estate's benefit.

**33.** The court of appeals noted that, although the lower court's comments indicated an unwillingness to award fees for what it considered an unsuccessful defense on appeal, it may have, in fact, included that amount in its award.

*Associates*, 3 F.3d at 514; *In re Spillane*, 884 F.2d 642, 647 (1st Cir.1989); *In re Casco Bay Lines, Inc.*, 25 B.R. 747, 753 (Bankr. 1st Cir.1982); *In re Kingsbury*, 146 B.R. 581, 585 (Bankr.D.Me.1992); *In re Saturley*, 131 B.R. 509, 521 (Bankr.D.Me.1991). And, although counsel's efforts need not be successful in every instance, they must benefit the estate. *In re DN Associates*, 3 F.3d at 516; *Widett v. D'Andria*, 241 F.2d 680, 683 (1st Cir.1957) (Act case discussing benefit and potential compensability of unsuccessful litigation services); *Guterman v. Parker & Co.*, 86 F.2d 546, 548 (1st Cir.1936) (Act case), *cert. denied*, 300 U.S. 677, 57 S.Ct. 670, 81 L.Ed. 882 (1937). *See generally* Westbrook, *Fees and Inherent Conflicts of Interest*, 1 A.B.I.L.R. 287, 290–95 (1993) (hereafter "Westbrook") (discussion indirect benefits to estate provided by debtor's counsel).

■ Assuming *Nucorp*'s holding that reasonable fees and expenses generated in preparing and presenting fee applications in accordance with the Code's requirements are compensable is the law in this circuit,[34] I am unconvinced that bankruptcy estates should bear the expense of run of the mill fee appeals.

Prevailing party tests are not the rule in the bankruptcy court. *In re DN Associates*, 144 B.R. 195; *Grant v. George Shumann Tire & Battery Co.*, 908 F.2d 874; *In re Manoa*, 853 F.2d 687.[35] Only if administrative compensation for reasonable, necessary services at levels commensurate with the cost of comparable nonbankruptcy services could not otherwise be achieved should an "anti-dilution device" such as fee shifting in fee appeals be affixed to §§ 330(a) and 503(b).

But for every argument supporting such a retrofit, there is an equally compelling rejoinder.

The applicants assert that to refuse administrative compensation for the successful appellate defense of fee awards would discourage competent professionals from representing debtors-in-possession and enable parties in contested reorganization proceedings to attempt to coerce favorable plan treatment by threatening to challenge fee applications and to appeal fee awards. But bankruptcy professionals regularly face the risk of nonpayment or reduced payment for a variety of reasons, including a debtor's scant resources or the ineffectiveness of their efforts. Other risks, including the risk that a fee determination will be appealed, are not unique to bankruptcy practice. Everywhere, fee disputes may effectively reduce a professional's compensation.[36] And one can appreciate that disallowing administrative compensation for fees generated in fee appeals may actually encourage compromise of fee disputes, saving considerable resources. *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 443 n. 2, 103 S.Ct. 1933, 1944 n. 2, 76 L.Ed.2d 40 (1983) (civil rights fee shifting statute discourages compromise).

Moreover, bankruptcy professionals, like other litigants, are protected against unfounded appeals by the procedural rules that enable the appellate court to award sanctions, including attorneys fees, in appropriate instances. *See, e.g.*, Fed.R.App.P. 38 and discussion *supra* note 19. Such provisions appropriately shift fees from one party to the other, rather than to the estate.

**34.** The First Circuit has not ruled expressly on the point. Other bankruptcy courts within the circuit have followed *Nucorp* to one degree or another. *See, e.g., In re Bank of New England*, 134 B.R. 450, 458 (Bankr.D.Mass.1991), *aff'd*, 142 B.R. 584 (D.Mass.1992). *See also In re WHET, Inc.*, 61 B.R. 709, 712 (Bankr.D.Mass.1986) (limiting compensation for time spent preparing fee application to "extra work" involved in providing required detail).

**35.** In passing I note the obvious. If § 330(a)(1) included a prevailing party requirement, NH & D would have been awarded no compensation in this case. *In re DN Associates*, 144 B.R. at 202. The debtor and its attorneys were unsuccessful in their reorganization efforts. But this case does demonstrate why "prevailing party" and benefit to the estate are not identical notions. Westbrook, *supra*, at 293.

**36.** On this point I disagree with cases such as *Hers Cosmetics* which posit that only by awarding fees to successful fee applicants for defense of appeals can we insure that compensation in bankruptcy is commensurate with compensation without, as required by § 330(a)(1). Practicing attorneys know that figuring the bill and sending it is not the same as collecting the fee. They know, as well, that trial court judgments are not the same as cash.

#### iv. *If You Can't Pay the Pilot, You Shouldn't Pay the Crew.*

The point becomes clearer yet when Pilot's request is viewed in light of its role in the bankruptcy proceeding. Pilot was the debtor's financial advisor. It was not retained to perform legal work. Its retention of counsel to defend Casco's appeal was not "necessary" to the rendition of financial advice. *See, e.g., In re Specialty Plywood, Inc.*, 160 B.R. 627, 623 (Bankr. 9th Cir.1993) (denying auctioneer's request for reimbursement of legal fees incurred in preparing and presenting auctioneers fee application; "expense is necessary if it was incurred because it was required to accomplish properly the task for which the professional was employed"). *See also In re Gillett Holdings, Inc.*, 137 B.R. 462, 471 (Bankr.D.Colo.1992); *In re Grabill Corp.*, 110 B.R. 356, 362 (Bankr.N.D.Ill.1990).

Pilot's attorneys worked for Pilot and not for the estate. *See In re Edisto Resources Corp.*, 160 B.R. 736, 739 (Bankr.D.Del.1993) (denying financial advisor's request for reimbursement of attorneys' fees incurred for, among other things, negotiating terms of advisor's retention); *In re Columbia Gas System*, 150 B.R. 553, 555 (Bankr.D.Del.1992) (disallowing financial advisor's attorneys' fees). It is difficult to conceive that, had Pilot (or the debtor) sought court authorization to retain counsel at the estate's expense to defend the appeal, it could have obtained it.

With that said, how could NH & D's fees be compensable? Aside from the fact that the law firm defended its own fee award, its circumstance is exactly the same as Pilot's. The fees generated were not necessary to

providing legal advice to DN and conferred no benefit on the estate. The law firm, too, must bear the expense of work done on its own behalf.

■ The work performed by NH & D and Pilot's attorneys defending this court's fee awards on appeal benefitted only NH & D and Pilot. It is not compensable.[37] For these reasons, the supplemental fee applications seeking compensation and reimbursement for fees and costs associated with the defense of Casco's appeals of this court's fee awards must be disallowed.[38]

#### 3. *Interest.*

NH & D and Pilot press their entitlement to interest on the compensation allowed by the August 20, 1992, order.

Administrative fee awards and other priority claims were treated within Class 4 of the confirmed plan in the following manner:

> **Class 4 Claims are Not Impaired.** All holders of allowed claims in Class 4 shall be paid, on the Effective Date of the Plan, cash equal to the allowed amount of their claims, or shall receive such other treatment as the holders of such claims shall agree upon, subject to Court approval.

Amended Joint Plan at 5. Consistent with these provisions, and with § 1129(a)(9)(A), compensation was payable to NH & D and to Pilot when the August 20, 1992, order was entered.[39]

Casco and Second Maine assert that the fee awards were not finally "approved" and, therefore not immediately payable, until the court of appeals affirmed them on September 1, 1993. They also assert that interest did

---

37. It should be no surprise that in matters of compensation, there exists a tension between the interests of the estate and those of the professional. *Cf., e.g., In re Martin*, 817 F.2d 175, 180 (1st Cir.1987) (addressing issues of disinterestedness and compensation); *Widett v. D'Andria*, 241 F.2d at 683 (recognizing that estate might benefit doubly by work performed for it by unauthorized professionals who may go unpaid).

38. Today's holding does not mean that work on fee appeals is never administratively compensable. The analysis must consider benefit to the estate. For instance, if a fee applicant's award is challenged (or denied) on the basis that payment of such administrative expenses is contrary to a

cash collateral order, defeat of such a challenge might hold benefit for the estate by establishing that other administrative fee claimants will be paid, thereby permitting the reorganization to proceed successfully. In such a case, it is conceivable that all or some part of fees generated in litigating the question might be compensable.

39. The "effective date," defined by the Amended Joint Plan as thirty days after entry of the confirmation order predated the fee award order by about two months. No one contends that NH & D or Pilot agreed to payment other than immediately, in full, in cash, upon allowance.

not accrue on the allowed fees for the simple reason that the plan did not provide for it. Neither argument provides sufficient solid fuel to sustain our satellite's flight much longer.

 The plan's failure to provide for payment of interest cannot, in this instance, defeat the applicants' right to it. The plan made no provision for payment of interest on Class 4 claims because it obligated Second Maine to pay them without delay. Plan terms governing interest, or lack thereof, on plan obligations govern so long as the plan's payment terms are otherwise observed. *Cf. Ocasek v. Manville Corp. Asbestos Compensation Fund*, 956 F.2d 152, 154 (7th Cir.1992) ("the Plan's interest provisions, which are more specific than that of the general statutory provision for interest, control the distribution of any interest on awards against the bankrupt"); *Jones v. Keene Corp.*, 933 F.2d 209, 214 (3rd Cir.1991) (where plan explicitly prohibits payment of interest, court's denial of interest is proper); *In re Allegheny International Inc.*, 145 B.R. 823, 826 (W.D.Pa. 1992) (where plan does *not* explicitly prohibit payment of interest, court may award interest under equitable principles). Casco and Second Maine may not cling to the plan's lack of interest terms while they walk away from the plan's requirement for immediate payment of Class 4 obligations.

 Entry of the final fee award orders was a final judgment for purposes of appeal. *See In re Spillane*, 884 F.2d 642, 644 (1st Cir.1989). The rules of appellate procedure apply to bankruptcy appeals as they do to other cases. *See In re Abijoe Realty Corp.*, 943 F.2d 121 (1st Cir.1991); *In re BWL, Inc.*, 123 B.R. at 686 (applying Fed. R.App.P. 38). Thus, the court of appeals' affirmance carried with it imposition of the obligation to pay interest on the fee awards:

> Unless otherwise provided by law, if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date judgment was entered in the district court. If a judgment is modified or reversed with a direction that a judgment for money be

entered in the district court, the mandate shall contain instructions with respect to allowance of interest.

Fed.R.App.P. 37.

Casco and Second Maine point to nothing that would interrupt Rule 37's provision for interest here. Even in the absence of appeal, judgment rate interest will accrue on fee awards until they are paid. *See In re Caribou Partnership III*, 152 B.R. 733, 740 (Bankr.N.D.Ind.1993) (bankruptcy professional is entitled to interest at the federal judgment rate on approved fees and expenses from approval to collection); *In re D.W.G.K. Restaurants*, 106 B.R. 194, 198 (Bankr.S.D.Cal.1989) (awarding interest on approved, uncollected professional compensation); *In re Energy Co-op., Inc.*, 95 B.R. 961, 966 (Bankr.N.D.Ill.1988) (enhancing previously approved fees by judgment rate interest for delayed payment); *In re D.C. Sullivan & Co., Inc.*, 69 B.R. 206 (Bankr.D.Mass. 1986) (awarding special counsel interest on fees for period of post allowance delay before payment). *Cf. In re Boston & Maine Corp. v. Moore*, 776 F.2d 2 (1st Cir.1985) (interest award not required for period between application and allowance).

For these reasons, NH & D and Pilot are entitled to interest in accordance with 28 U.S.C. § 1961 on their approved fees from August 20, 1992, when the fee award entered, to October 21, 1993, when they were paid.[40]

### Conclusion

For the reasons set forth above, the supplemental fee applications seeking payment of attorneys' fees and expenses associated with appeals of this court's orders of August 20, 1992 are disapproved; the requests for interest on unpaid fees at the federal judgment rate from allowance to payment is granted; and Second Maine is ordered to pay such interest to the applicants. A separate order consistent with this decision shall enter forthwith.

---

40. *See* Fed.R.App.P. 37 Advisory Committee Note (referencing 28 U.S.C. § 1961).